UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X    For Online Publication Only
WARREN CEASER,

                                    Plaintiff,   **ORDER**
                                                                                 21-CV-3115 (JMA)
      -against-

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
-----------------------------------------------------------------------X

**AZRACK, United States District Judge:**

       Plaintiff Warren Ceaser ("Plaintiff") seeks review and reversal of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant"), reached after a hearing before an administrative law judge, denying his application for Social Security disability and disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See ECF Nos. 18, 19.) For the following reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's cross-motion is GRANTED.

### I.    BACKGROUND

       The Court assumes the parties' familiarity with this matter and summarizes the relevant facts and history based on the record on appeal and the parties' instant motion papers.

       Plaintiff filed his application for disability insurance benefits on March 18, 2019, alleging a disability onset date of August 5, 2016 due to impairments to his right thumb, right hand, lower back, and knees. (Tr.[1] 42.) He was 50 years old at the time. (Tr. 41-42.) Following the denial of his application, Plaintiff requested a hearing. (Tr. 113-120.) On July 21, 2020, Administrative Law Judge Margaret Donaghy (the "ALJ") conducted an administrative hearing, at which Plaintiff

---

[1] Citations to "Tr." refer to the corresponding pages of the certified administrative transcript. (ECF No. 12.)

was represented by counsel.  (Tr. 7-37.)  An impartial vocational expert ("VE") also appeared at the hearing.  (Id.)

In a decision dated September 1, 2020, the ALJ denied Plaintiff's claim.  (Tr. 68-84 (the "Decision").)  The ALJ followed the five-step analysis pursuant to 20 C.F.R. § 404.1520.  First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  (Tr. 70.)  Second, the ALJ found that Plaintiff suffered from three impairments:  (1) degenerative disc disease; (2) degenerative joint disease; and (3) obesity.  (Tr. 71.)  Third, the ALJ found that these impairments did not meet or medically equal the severity of at least one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.)  Although the ALJ considered "listed impairments" under Listings 1.04 (disorders of the spine) and 1.02 (major dysfunction of a joint), she determined that the documented medical evidence did not satisfy the criteria for impairment under either Listing.  (Tr. 71-72.)  Fourth, the ALJ found that Plaintiff had the residual functioning capacity ("RFC") to perform "the full range of light work as defined in 20 CFR 404.1567(b)" and found that Plaintiff could not perform his past relevant work as a City Deputy Sheriff because that role's "medium exertion exceeds the light exertion" permitted by Plaintiff's RFC.  (Tr. 72-77.)  Fifth, however, based on the VE's testimony, and considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform the occupations of Bailiff, Security Guard, Radio Dispatcher, and Police Aide.  (Tr. 78-79.)  The ALJ thus concluded that Plaintiff was "not disabled," as defined by the Act, from August 5, 2016, through the Decision date.  (Tr. 79.)

The Decision became final on April 21, 2021, when the Appeals Council denied Plaintiff's request for review.  (Tr. 1-6.)  This appeal followed.

## II.    LEGAL STANDARDS

### A.    Standard of Review

In reviewing a denial of disability benefits by the Social Security Administration, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvior v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1984) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The "reviewing court will order remand for further proceedings when the Commissioner failed to provide a full and fair hearing, made insufficient findings, or incorrectly applied the applicable laws and regulations." Kessler v. Comm'r of Soc. Sec., No. 17-cv-4264, 2020 WL 1234199, at *5 (E.D.N.Y. Mar. 13, 2020) (citing Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999)).

B.  **Social Security Disability Standard**

Under the Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" Id. § 423(d)(2)(A).

As discussed above, the Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines whether a claimant is disabled. See 20 C.F.R. §§ 404.1520, 416.920. Within this framework, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a "severe impairment," (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find his disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his prior type of work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden at the first four steps, but the burden shifts to the Commissioner at step five. Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

As Plaintiff's application for disability insurance benefits was filed after March 27, 2017, his claims are governed by the current regulations concerning the consideration of medical opinions. See Darcy v. Comm'r of Soc. Sec., No. 20-cv-4769, 2023 WL 2035945, at *2 (E.D.N.Y. Feb. 16, 2023) (citing 20 C.F.R. § 404.1520c). "Under the new regulations, a treating doctor's

4

opinion is no longer entitled to a presumption of controlling weight." Knief v. Comm'r of Soc. Sec., No. 20-cv-6242, 2021 WL 5449728, at *6 (S.D.N.Y. Nov. 22, 2021) (quotation marks omitted). ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

Under the current regulations, an ALJ "must evaluate the persuasiveness of all medical opinions in the record based on five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the medical opinion." Rosario v. Comm'r of Soc. Sec., No. 21-cv-1151, 2022 WL 4593069, at *5 (S.D.N.Y. Sept. 30, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). Supportability and consistency are the most important factors in evaluating a medical opinion. Id. (citing 20 C.F.R. § 404.1520c(b)(2)). For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). For the "consistency" factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Id. § 404.1520c(c)(2). "As part of his or her decision, the ALJ must explain how the factors of supportability and consistency were considered." Rosario, 2022 WL 4593069, at *5 (citing id. § 404.1520c(b)(2)). Generally, the ALJ may, but is not required to, explain how the other factors were considered. Id. § 404.1520c(b)(2); Rosario, 2022 WL 4593069, at *5.

## III.     DISCUSSION

Plaintiff's instant appeal challenges whether the ALJ's RFC determination is supported by substantial evidence.  He argues that the ALJ did not properly consider all the medical opinion evidence in reaching her determination, while Defendant counters that the ALJ considered – and properly discounted – these opinions in reaching her final determination.  The Court agrees.

**A.     The ALJ's RFC Determination**

As noted above, based on the evidentiary record and hearing testimony, the ALJ concluded that Plaintiff had the RFC to perform "the full range of light work as defined in 20 CFR 404.1567(b). (Tr. 72-77.)  Plaintiff contends that this conclusion is not supported by substantial evidence, and instead points to several medical opinions he believes the ALJ did not properly consider:  (1) Dr. Aric Hausknecht's October 31, 2016 opinion; (2) Dr. Chaim Shtock's May 23, 2018 opinion; (3) Dr. Syeda Asad's June 11, 2019 opinion; (4) Dr. Scott Wilson's July 15, 2020 RFC questionnaire; and (5) assorted statements by Dr. Wilson and Dr. John Ventrudo.  In formulating an RFC, an ALJ must consider all the relevant evidence and determine the most that a plaintiff can do, despite that plaintiff's impairments.  See 20 C.F.R. § 404.1545(a)(3).  Where, as here, a plaintiff challenges an ALJ's RFC evaluation, the burden is on the plaintiff to demonstrate functional limitations that preclude any substantial gainful activity.  (See 20 C.F.R. § 404.1512(a).)  As set forth below, the ALJ's opinion belies Plaintiff's argument, and demonstrates that the ALJ properly considered all the above medical evidence in reaching her RFC determination.

1. Dr. Hausknecht's October 31, 2016 Examination

Dr. Hausknecht's October 31, 2016 workers' compensation-related examination yielded "positive clinical findings of 5- weakness of both shoulder abductors and both hip flexors; symmetrically depressed reflexes in the upper and lower extremities; cervical, midthoracic and lumbosacral paravertebral tenderness; positive Spurling maneuver on the right and positive straight

6

leg raise testing on the right, with moderate restriction of mobility in the cervical and thoracolumbar spines." (Tr. 476-77.) Dr. Hausknecht characterized Plaintiff's prognosis as "guarded" and his "temporary total disability" necessitated "restrict[ing] his activities" for an indeterminate amount of time. (Tr. 477.) The ALJ this opinion to be unpersuasive because "[t]he opinions of the assessors for worker[s'] compensation use different standards from the Social Security Administration and are very vague." (Tr. 76-77.) Plaintiff's general objection to this conclusion lacks factual or legal support. Accordingly, and because a plaintiff's ability to work is an issue reserved for the Commissioner in accordance with 20 C.F.R § 404.1520(c), the Court concludes that the ALJ did not err in discounting Dr. Hausknecht's opinion.

2. Dr. Shtock's May 23, 2018 Examination

Dr. Shtock's May 23, 2018 orthopedic examination revealed that Plaintiff could reasonably ambulate and care for himself. (Tr. 875-80.) He noted that Plaintiff had a normal gait, could walk on his toes without difficulty, could rise from chair without difficulty and get on and off exam table without assistance, had 4/5 grip strength in his right hand and 5/5 in his left hand, no cervical pain or spasm, full range of motion of upper extremities except right thumb, and no tenderness and trigger points in his thoracic and lumbar spine, no muscle atrophy or loss of sensation, a negative straight leg raise test and no joint instability. (Tr. 876-78.) Dr. Shtock opined that Plaintiff had "no limitations in standing or sitting long periods; mild limitations in heavy lifting, using right upper extremity, squatting, kneeling, crouching, frequent stair climbing, walking long distances, and frequent bending; mild to moderate limitations in using his right hand for fine and gross motor activities due to weakness and limited range of motion," and only moderate limitations in performing overhead activities with his right arm. (Tr. 878.) The ALJ found this opinion unpersuasive because Dr. Shtock failed to define "mild" or "moderate" in the context of his investigation and did not assess Plaintiff's specific work-related functional limitations. (Tr. 76.)

7

Plaintiff generally objects to the ALJ's discounting of this opinion; her objection is again misplaced. Not only was the ALJ within her right to disregard this opinion based on its vagueness, but she concluded that the objective portion of the examination evinced Plaintiff's capability of performing light exertional tasks and occasional postural maneuvers, both within Plaintiff's RFC. Accordingly, the Court concludes that the ALJ did not err in discounting Dr. Shtock's opinion.

3. Dr. Asad's June 11, 2019 Examination

Dr. Asad's June 11, 2019 internal medicine examination again revealed that Plaintiff could ambulate and care for himself. (Tr. 1148-50.) Dr. Asad reported that Plaintiff had full flexion, extension and rotary movement of his cervical and lumbar spinal sections, normal thoracic spine, full range of motion of his upper extremities and knees, and full grip strength. (Tr. 1149-50.) Finally, Dr. Asad opined that Plaintiff had only mild to moderate limitations in his abilities to squat, kneel, bend, walk, stand for a long period of time, and lift, carry, or push heavy objects, but found an otherwise normal gait. (Tr. 1148-50.) The ALJ found Dr. Asad's opinion persuasive, and sufficient to support her RFC determination because it is consistent with a finding that Plaintiff would be capable of light exertional tasks and occasional postural maneuvers. (Tr. 76.) Plaintiff's generalized objection fails to impugn the ALJ's decision to credit Dr. Asad's conclusion, which is further supported by evidence that Plaintiff's condition improved with injections to the point where he could perform light exertional tasks. (Tr. 430-447.) Accordingly, the Court concludes that the ALJ acted appropriately in considering and crediting Dr. Asad's medical opinion.

4. Dr. Wilson's July 15, 2020 RFC Questionnaire

On July 15, 2020, Dr. Wilson completed an RFC questionnaire, wherein he opined that Plaintiff could walk 2-3 city blocks, sit for 20-30 minutes, stand for 10-15 minutes, and sit, stand, and walk continuously for a period of less than 2 hours. (Tr. 1287-1288.) He further opined that because Plaintiff would need multiple unscheduled breaks during the day and would likely be

absent from work about four days a month due to his impairments and treatment, he (Plaintiff) would be unable to perform even sedentary exertional tasks. (Tr. 1289.) The ALJ found Dr. Wilson's opinion unpersuasive because it was neither supported by the record nor the consultative examinations. (Tr. 77.) The ALJ also noted the Plaintiff benefitted from treatment, and that Dr. Wilson had contradicted his own observations. (Tr. 77.) While Plaintiff asserts that the ALJ erred in discounting Dr. Wilson's consultative opinions, his flawed argument does not address Dr. Wilson's concession that he benefitted from treatment, which would permit Plaintiff to return to gainful employment. Accordingly, the Court concludes that the ALJ acted appropriately in considering and discounting Dr. Wilson's RFC questionnaire.

5. Dr. Wilson's and Dr. Ventrudo's Disability Statements

Finally, Plaintiff contends that the ALJ erred in declining to rely on certain statements made by Dr. Wilson and Dr. Ventrudo that Plaintiff was moderately, partially disabled on some occasions and totally disabled on other occasions. (Tr. 76-77, 431-51.) Plaintiff again offers neither statutory language nor caselaw in support of his position, nor does he dispute that a plaintiff's ability to work is an issue reserved for the Commissioner in accordance with 20 C.F.R § 404.1520(c). Accordingly, the Court finds that the ALJ did not err in discounting Dr. Wilson's or Dr. Ventrudo's opinions and concludes that the ALJ's RFC determination was supported by substantial evidence.

6. Additional RFC-Relevant Evidence Considered by the ALJ

Plaintiff next argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied exclusively on the medical source statements from consultative, rather than treatment, examinations. The Court disagrees. Simply put, Plaintiff relies on inapplicable caselaw to support his position, and is incorrect that the ALJ did not rely on Plaintiff's treatment records in reaching her conclusion. Indeed, in determining Plaintiff's RFC, the ALJ considered both the medical source statements of Dr. Shtock and Dr. Asad, which resulted from

consultative examinations, and also the prior administrative findings, as well as Plaintiff's reports of symptom improvement with injections, the objective medical findings and imaging and Plaintiff's reported functional abilities. (Tr. 72-77.) An ALJ's evaluation of a plaintiff's limitations does not require an exhaustive analysis of every issue if the ALJ's decision reveals that the ALJ considered and accounted for a plaintiff's limitations. See McGee v. Commissioner of Social Security, No. 20-cv-3716, 2022 WL 3912575 (E.D.N.Y. Aug. 29, 2022). The ALJ did just that.

The ALJ properly considered the evidence that Plaintiff's symptoms improved with injections, such that he could perform the necessary tasks for jobs that fell within his RFC. See Dowling v. Berryhill, No. 16-cv-4784, 2018 WL 472817, at *1 (E.D.N.Y. Jan. 18, 2018) (ALJ properly considered claimant's improvement with conservative treatment where her "treatment regimen also indicates that she is not as restricted as she asserts"); see also Tr. 76-77. Many of the records of Plaintiff's improving symptoms came from routine treatment examinations. (Tr. 76-77.) Finally, the ALJ properly considered Plaintiff's reported functional abilities in determining his RFC. (Tr. 75.) In his May 2019 Function Report, Plaintiff stated that he can care for his pet, routinely perform household tasks, walk, drive, shop in stores, spend time with others and attend church on a regular basis. (Tr. 278-87.) Plaintiff also testified he can walk 2-3 blocks, he cooks sometimes, he tries to be outside and gets exercise by setting up sprinklers, takes out the garbage, drives 2-3 times a week, and has no significant problems with personal care. (Tr. 19-21.)

In sum, because the ALJ properly considered all the opinion evidence, prior administrative findings, objective medical findings, as well as Plaintiff's testimony and reports of his symptom improvement and functional abilities, the ALJ did not solely rely only on the medical source statements in determining that Plaintiff could perform a full range of light work. Accordingly, the Court concludes that the ALJ's RFC determination is supported by substantial evidence.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's cross-motion.  The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

**SO ORDERED.**

Dated:  October 6, 2023
       Central Islip, New York

                                                         /s/   (JMA)
                                                         JOAN M. AZRACK
                                                         UNITED STATES DISTRICT JUDGE